SCOTT SVESLOSKY, Cal. Bar No. 217660
MARY E. GREGORY, Cal. Bar No. 210247
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email:      ffalzetta@sheppardmullin.com
            ssveslosky@sheppardmullin.com
            mgregory@sheppardmullin.com

Attorneys for Plaintiff
LIBERTY INSURANCE
CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, an Illinois Corporation,<br><br>       Plaintiff,<br><br>       v.<br><br>JENNIFER CANNADY, an individual; and DAMIEN GIBBS, an individual,<br><br>       Defendants. | Case No. 5:23-cv-2575<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND RESTITUTION** |

Plaintiff, Liberty Insurance Corporation ("Liberty"), complains against defendants Jennifer Cannady ("Cannady"), and Damien Gibbs ("Gibbs"), (collectively "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action based upon complete diversity of citizenship under 28 U.S.C. section 1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

2.      Liberty is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in the State of Massachusetts.  Liberty does not have substantial predominance of its corporate activities in the State of California.  Its corporate "nerve center," where the majority of its executive and administrative functions are performed, is in Massachusetts. Liberty was at all relevant times qualified to do business in California.

3.      Defendant Cannady is an individual residing in the City of Rancho Cucamonga, California.

4.      Liberty is informed and believes, and thereon alleges, that Defendant Gibbs is an individual residing in the County of San Bernardino, State of California.

5.      Venue is proper in this district pursuant to 28 U.S.C. section 1391(b), because (1) all Defendants reside in this judicial district, and (2) a substantial part of the events giving rise to the claim occurred in this judicial district, including the filing and pendency of the underlying action giving rise to this declaratory relief action in the San Bernardino County Superior Court, and the location of the incidents alleged in that underlying action.

## **GENERAL ALLEGATIONS**

### **The Underlying Action**

6.      On June 23, 2022, Gibbs filed a lawsuit entitled *Gibbs v. The County of San Bernardino, Jennifer Cannady, et al.*, in the Superior Court for the State of California, County of San Bernardino, Case No. CIVSB2213297 (the "Underlying Action").  On February 22, 2023, Gibbs filed a First Amended Complaint ("FAC") against Cannady only.  Attached to this Complaint as **Exhibit A** is a true and correct copy of the FAC (the "Underlying FAC").

7.      In the Underlying FAC, Gibbs alleges that Cannady "used her position as Chief of the Public Defender's Office to enslave, imprison and coerce sex" from him.

8.    In the "Facts" Section of the FAC, Gibbs alleges:

9.    Around November 2019, Cannady had Gibbs perform construction and repairs to her home.  Gibbs is the relative of Cannady's subordinate at the Public Defender's Officer 0f San Bernardino County

10.    Subsequently, an intimate relationship began between Cannady and Gibbs.

11.    Eventually, Gibbs terminated the relationship with Cannady.

12.    However, Cannady would not accept the end of the relationship.

13.    Cannady said that if Gibbs did not stay with her, then she would call the police on him and falsely accuse Gibbs of rape and violence.

14.    As a result, Gibbs was forced to engage in sexual actions with Cannady.  Moreover, Gibbs was forced to stay at Cannady's home.

15.    After Gibbs refused to submit to threats, acts of violence, and false imprisonment, Cannady called the police on him.  To responding officers, Cannady said she was the Deputy Chief in the Public Defender's Office for San Bernardino County.  Cannady stated she knew the Sheriff for San Bernardino County.  She called Christopher Gardner, the Public Defender for San Bernardino County.  Additionally, Cannady's subordinate at Public Defender's Office for San Bernardino County was also present.  Gibbs was put in jail without probable cause and based on false charges.

16.    Even after calling the police and having Gibbs falsely arrested, Cannady continued to threaten and coerce Gibbs.  She forced him to run errands, make repairs, and other tasks.  In fact,

Cannady would often tell Gibbs' relative at PD Office (and Cannady's subordinate) to pass on orders to Gibbs. Otherwise, Cannady would use her position as a public defender to have Gibbs arrested and criminally prosecuted.

17.    Later, Cannady called a social worker and put Gibbs in rehab saying that Gibbs had a problem.

18.    Cannady, a Deputy Chief, used her position to engage in sexual relations with Mr. Gibbs, and then used her Public Defender connections, and PD employees to obtain beds in two drug rehab locations with the Salvation Army.

19.    Mr. Gardner, Cannady's supervisor and the Public Defender of San Bernardino County, knew of the illicit activities when he was the PD, but failed to take proper corrective action. Instead, he bragged about using his position of authority and his connections to squelch the police report involving the young man and Chief.

20.    Cannady has a practice and pattern of using her official authority in the Public Defender's Office for San Bernardino County to find, groom, manipulate, and abuse young black men.

9.    In his Cause of Action for "42 U.S.C. Section 1983", Gibbs alleges:

22.    … defendant was acting within the course and scope of her employment as public defender, policy maker, and/or civilian employee of the Public Defender of San Bernardino County, a department and subdivision of defendant County of San Bernardino.

23.    … the conduct and actions of Cannady as alleged herein occurred during Cannady's normal working hours as the San Bernardino County public defender or occurred under the

pretense that either was acting as a San Bernardino County public defender or were made possible solely because of her position as a San Bernardino County public defender.

24. This action is brought pursuant to state and federal law for violation of Plaintiff's procedural and substantive due process rights and the violation thereof resulting from the false imprisonment by the defendants named herein.

25. As delineated above, Plaintiff was wrongfully arrested without probable cause, based upon the false charges, statements, police reports, evidence and testimony presented by Cannady.

26. Said defendant, in Violation of Penal Code section 118.1 knowingly filed materially false police reports, made materially false statements to investigators and prosecutors that Plaintiff had violated the California Penal Code, and presented falsified evidence, all for the purpose of having Plaintiff wrongfully imprisoned.

27. The acts of Cannady deprived Gibbs of his rights under federal and state law.

28. At no time did said defendant have probable cause to arrest Plaintiff for any crime or to recommend that he be prosecuted. Notwithstanding this, with malice and conscious disregard for his rights to due process, said defendant presented the above false evidence and recommended that Plaintiff be charged and prosecuted. Thereafter, they meaningfully participated in his wrongful imprisonment.

29. As the actual and proximate result of the acts and omissions of said defendant as described herein, Plaintiff was made to lose his freedom and liberty, this in violation of the state and federal

procedural and substantive due process guarantees.  During said
incarceration Plaintiff suffered personal and bodily injuries, and
during said time he suffered, and continues to suffer, severe
emotional and psychological pain, suffering, anxiety, depression,
anguish, shock, and fear.  Further, Plaintiff will likely be
required to hire medical specialists for treatment and therapy for
his injuries.  Plaintiff has experienced or likely will suffer with a
significant loss of wages and a significant loss of his ability to
obtain and maintain gainful employment as a proximate result of
the misconduct of defendant.

30.    The aforementioned acts of said defendant was willful, wanton,
malicious and oppressive and said misconduct shocks the
conscience thereby justifying the awarding of exemplary and
punitive damages as to all non-municipal defendants.

10.    Based on Cannady's conduct as alleged by Gibbs and described in
paragraphs 8 and 9 above, Gibbs asserts a single cause of action against Cannady for
an apparent violation of 42 U.S.C. Section 1983.  In the Underlying Action, Gibbs
seeks loss of past and future earnings; lost pension, insurance and other employment
benefits; medical expenses; special damages; non-economic damages; attorneys'
fees and costs; civil penalties as authorized by statute; interest; and punitive
damages.

**The Liberty Policies**

11.    Liberty issued LibertyGuard Deluxe Homeowners Policy Number H37-
261-489086-75 to Cannady effective January 28, 2020 to January 28, 2021.  Liberty
renewed the policy for two additional one-year periods through January 28, 2023.
(collectively the "Policies").  Attached to this Complaint are true and correct copies
of the following policies:

**Exhibit B:   The January 28, 2020 to January 28, 2021 Policy.**

**Exhibit C:   The January 28, 2021 to January 28, 2022 Policy.**

**Exhibit D:   The January 28, 2022 to January 28, 2023 Policy.**

12.     One or more of the Policies was in effect at the time the acts alleged in the Underlying FAC took place.

13.     The Policies include LibertyGuard Deluxe Homeowners Policy form HO 00 03 04 91  (the "Coverage Form"), as amended by form FMHO 2510 (Ed. 5/03), entitled "Amendatory Endorsement" ("Form 2510") and form FMHO 2934 (Ed. 7/04), entitled Homeowner Amendatory Endorsement ("Form 2934").

14.     Under SECTION II – LIABILITY COVERAGES, the Coverage Form includes COVERAGE E – PERSONAL LIABILITY, which provides as follows:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> **1.**    Pay up to our limit of liability for the damages for which the "insured" is legally liable.  Damages include prejudgment interest awarded against the "insured"; and
>
> **2.**    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

15.     Under SECTION II – LIABILITY COVERAGES, the Coverage Form includes COVERAGE F – MEDICAL PAYMENTS TO OTHERS, which provides as follows:

> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury."  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.  This coverage does not apply to you or regular residents of your household except "residence employees."  As to others, this coverage applies only:

1.     to a person on the "insured location" with the permission of an "insured"; or

2.     To a person off the "insured location," if the "bodily injury":

\*    \*    \*

    **b.**   Is caused by the activities of an "insured". .

16.     Under SECTION II – LIABILITY LOSSES WE DO NOT COVER, as amended by Form 2510, the Policies provide, in relevant part:

    **1.**   **Coverage E – Personal Liability and Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

    **a.**   Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage":

    **(1)**   is of a different kind, quality, or degree than initially expected or intended; or

    **(2)**   is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

    **b.**   Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business;

\*    \*    \*

    **k.**   Arising out of sexual molestation, corporal punishment or physical or mental abuse; …

\*    \*    \*

17.     Under **DEFINITIONS**, the Coverage Form, as amended by Form 2934, provides, in relevant part:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations…

\*    \*    \*

"We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1.  "Bodily Injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2.  "Business" includes trade, profession or occupation.

\*       \*       \*

5.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    a.  "bodily injury"; or

    b.  "property damage."

**Liberty's Reservation of Rights**

18.     On October 23, 2023, Liberty agreed to defend Cannady in the Underlying Action subject to a full and complete reservation of rights ("Liberty's Reservation of Rights").

19.     Liberty's Reservation of Rights includes, without limitation, the right to deny coverage, because Gibbs does not allege any "bodily injury" caused by an "occurrence" as the Policies define those terms.

20.     Liberty also reserved its right to deny coverage, because Gibbs bases his 42 U.S.C. section 1983 claim on an allegation that Cannady had him falsely imprisoned and the Policies do not provide coverage for "personal injury" offenses such as false imprisonment.

21.     Liberty also reserved its right to deny coverage, because, among other things, Exclusion 1.a. (the "Expected or Intended Injury Exclusion"), Exclusion 1.b. (the "Business Pursuits Exclusion"), and/or Exclusion 1.k. (the "Sexual Molestation Exclusion") in the Policies conclusively eliminate any potential of covered damages against Cannady in the Underlying Action.

22.     Liberty also reserved its right to deny coverage, because California Insurance Code section 533 ("Section 533") prohibits Liberty from indemnifying

1  Cannady against the damages that Gibbs seeks in the Underlying Action based on
2  Cannady's alleged willful conduct.

3      23.    Liberty further reserved its right to have its duties judicially determined
4  by filing a lawsuit, seeking the Court's declaration of its rights and obligations under
5  the Policies; and to seek reimbursement from Cannady for the attorneys' fees and
6  costs that it incurs and pays solely in the defense of claims not covered under the
7  Policies and/or any indemnity payment that it may make.

8

9                    **FIRST CLAIM FOR RELIEF**
10            **No Duty to Defend Under the Liberty Policies**
11              **(against Defendants Cannady and Gibbs)**

12     24.    Liberty re-alleges and incorporates by reference paragraphs 1 through
13  23 of the Complaint, as though fully set forth here.

14     25.    An actual controversy exists between Liberty and Defendants regarding
15  Liberty's obligations, if any, to defend Cannady under the Policies in connection
16  with the Underlying Action.

17     26.    Liberty is informed and believes, and thereupon alleges, that
18  Defendants contend that the Policies obligate Liberty to defend Cannady against
19  some or all of the claims alleged against her in the Underlying Action.  Liberty
20  disputes this and contends that it has no duty to defend Cannady against any of the
21  claims asserted in the Underlying Action.

22     27.    Liberty contends that the Policies contain terms, conditions, exclusions
23  and/or limitations that conclusively eliminate any potential for covered damages
24  and, therefore, eliminate any duty to defend Cannady in the Underlying Action.

25     28.    Specifically, Liberty contends that it has no duty to defend Cannady in
26  the Underlying Action, because:  (1)  Gibbs does not allege any "bodily injury" or
27  "property damage" caused by an "occurrence" as the Policies define those terms; (2)
28  the Policies do not provide coverage for "personal injury" offenses such as false

imprisonment; and (3) the Policies' exclusions, quoted in whole or in pertinent part above, eliminate any potential for covered damages under the Policies, and eliminate a duty, if any, Liberty might otherwise have to defend Cannady in the Underlying Action.

29.   Liberty has no plain, speedy, or adequate remedy at law to resolve the controversy between it and Defendants.

30.   As such, Liberty is entitled to a judicial determination of its rights and duties, if any, under the Policies with respect to the Underlying Action under 28 U.S.C. section 2201.

31.   Liberty, therefore, seeks a judicial determination and declaration by this Court that:

      a.   Liberty has no duty to defend Cannady under the Policies, or to pay any portion of her defense costs, in the Underlying Action; and

      b.   Liberty is entitled to withdraw from its defense of Cannady in the Underlying Action.

## SECOND CLAIM FOR RELIEF

### No Duty to Indemnify Under the Liberty Policies

### (against Defendants Cannady and Gibbs)

32.   Liberty re-alleges and incorporates by reference paragraphs 1 through 31 of the Complaint, as though fully set forth here.

33.   An actual controversy exists between Liberty and Defendants regarding Liberty's obligations, if any, to indemnify Cannady under the Policies in connection with the Underlying Action.

34.   Liberty is informed and believes, and thereupon alleges, that Defendants contend that the Policies obligate Liberty to indemnify Cannady against some or all of the claims alleged against her in the Underlying Action.  Liberty

1    disputes this and contends that it has no duty to indemnify Cannady against any of

2    the claims asserted in the Underlying Action.

3        35.    Liberty contends that the Policies contain terms, conditions, exclusions

4    and/or limitations that conclusively eliminate coverage for any damages, and

5    therefore eliminate any duty to indemnify Cannady in the Underlying Action.

6        36.    Specifically, Liberty contends that it does not have a duty to indemnify

7    Cannady in the Underlying Action because:  (1)  Gibbs does not allege any "bodily

8    injury" or "property damage" caused by an "occurrence" as the Policies define those

9    terms; (2) the Policies do not provide coverage for "personal injury" offenses such

10   as false imprisonment; and (3) the Policies' exclusions, quoted in whole or in

11   pertinent part above, eliminate coverage for any covered damages under the

12   Policies, and eliminate a duty, if any, Liberty might otherwise have to indemnify

13   Cannady in the Underlying Action.

14       37.    Liberty also believes that California public policy, including, without

15   limitation, public policy reflected in Section 533 and/or California Civil Code

16   section 2773, prohibits Liberty from indemnifying Cannady against the damages

17   that Gibbs seeks against her in the Underlying Action.

18       38.    Liberty has no plain, speedy, or adequate remedy at law to resolve the

19   controversy between it and Defendants.

20       39.    As such, Liberty is entitled to a judicial determination of its rights and

21   duties, if any, under the Policies with respect to the Underlying Action under 28

22   U.S.C. section 2201.

23       40.    Liberty, therefore, seeks a judicial determination and declaration by this

24   Court that it has no duty to indemnify Cannady against any claim in the Underlying

25   Action, under the Policies.

26   / / /

27   / / /

28   / / /

SMRH:4887-9610-2798.1          COMPLAINT FOR DECLARATORY RELIEF AND RESTITUTION

## THIRD CLAIM FOR RELIEF

### For Restitution, Recoupment, Unjust Enrichment

### and/or other Equitable Relief for Reimbursement of Defense Costs

### (against Defendant Cannady only)

41.     Liberty re-alleges and incorporates by reference paragraphs 1 through 40 of this Complaint, as though fully set forth here.

42.     If this Court rules that Liberty had and/or has no duty to defend Cannady against the claims alleged in the Underlying Action, then Liberty, which timely reserved its rights to recoup defense costs incurred solely in the defense of claims that did not create the potential for covered damages under the Policies, is entitled to restitution from Cannady for:  (1) past defense costs that Liberty already incurred and paid; and (2) defense costs that Liberty will continue to incur, and pay, until the Court declares otherwise, plus prejudgment interest.

## PRAYER FOR RELIEF

**As to the First Claim for Relief:**

1.     For a declaration that Liberty has and had no duty to defend Cannady under the Policies in connection with the claims that Gibbs asserts in the Underlying Action;

2.     For a declaration that Liberty is entitled to withdraw from its defense of Cannady in the Underlying Action;

3.     For costs of suit; and

4.     For such other and further relief as the Court deems just and proper.

**As to the Second Claim for Relief:**

1.     For a declaration that Liberty has no duty to pay any portion of any settlement, and/or judgment that might be incurred, awarded, and/or entered against Cannady in connection with the claims that Gibbs asserts in the Underlying Action;

2.      For a declaration that Liberty has no duty to indemnify Cannady in the Underlying Action;

3.      For costs of suit; and

4.      For such other and further relief as the Court deems just and proper.

**As to the Third Claim for Relief:**

1.      For an order that Liberty is entitled to reimbursement from Cannady for the defense costs it incurs and pays in the Underlying Action in an amount to be proven by motion or at trial;

2.      For pre-judgment interest on each payment of defense costs that this Court determines Liberty had no obligation to pay under the Policies;

3.      For costs of suit herein; and

4.      For such other and further relief as the Court deems just and proper.

Dated:  December 18, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     _____
                     */s/ Mary E. Gregory*
                    SCOTT SVESLOSKY
                    MARY E. GREGORY
                    Attorneys for Plaintiff
              LIBERTY INSURANCE CORPORATION